**BEFORE THE JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: AMAZON TARIFF LITIGATION | MDL No. |

**MEMORANDUM IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS TO THE WESTERN DISTRICT OF WASHINGTON PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. Allegations in the First-Filed Washington Action and the Related Actions ..... 2

B. Procedural History of the Pending Washington Action and Related Actions ..... 4

1. Proceedings in the First-Filed Washington Action ..... 4

2. The Related Actions ..... 5

a. The Florida action ..... 6

b. The Michigan action ..... 6

c. The first-filed New York action ..... 7

d. The second-filed New York action ..... 8

e. The Ohio action ..... 8

III. ARGUMENT ..... 9

A. Transferring the pending class actions for pretrial proceedings is proper. ..... 9

1. All of these class actions involve common questions of fact. ..... 10

2. Consolidating the class actions will further the convenience of the parties and the witnesses. ..... 11

3. Transfer and consolidation will promote just and efficient conduct of these class actions. ..... 13

B. The Related Actions should be transferred to the Western District of Washington before Judge Lin under § 1407. ..... 14

IV. CONCLUSION ..... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Crash Over the S. Indian Ocean, on Mar. 8, 2014*,
190 F. Supp. 3d 1358 (J.P.M.L. 2016)....................11

*In Re Amazon Service Fee Litig.*,
Case No. 2:26-cv-00743-TL (W.D. Wash.)....................15

*In re Amazon Tariff Litig,*,
Case No. 2:26-cv-01670-TL (W.D. Wash.).................... *passim*

*In re Benicar (Olmesartan) Prods. Liab. Litig.*,
96 F. Supp. 3d 1381 (J.P.M.L. 2015)....................13

*In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*,
655 F. Supp. 3d 1370 (J.P.M.L. 2023)....................14

*In re BPS Direct, LLC, & Cabela's LLC, Wiretapping Litig.*,
677 F. Supp. 3d 1363 (J.P.M.L. 2023)....................10

*In re: Chrysler LLC 2.7 Liter V–6 Engine Oil Sludge Prods. Liab. Litig.*,
598 F. Supp. 2d 1372 (J.P.M.L. 2009)....................14

*In re CVS Caremark Corp. Wage & Hour Emp't Pracs. Litig.*,
684 F. Supp. 2d 1377 (J.P.M.L. 2010)....................10

*In re Dividend Solar Fin., LLC, & Fifth Third Bank Sales & Lending Pracs. Litig.*,
753 F. Supp. 3d 1365 (J.P.M.L. 2024)....................11, 15

*Emerson v. Amazon.com Inc. and Amazon.com Services LLC*,
No. 2:26-cv-12614-TGB-EAS (E.D. Mich.) ....................6, 10, 11

*Gelboim v. Bank of Am. Corp.*,
574 U.S. 405 (2015)....................11

*Lasseter v. Amazon.com, Inc.*,
No. 8:26-cv-02019 (M.D. Fla.)....................6, 10, 11

*In re: North Sea Brent Crude Oil Futures Litig.*,
978 F. Supp. 2d 1384 (J.P.M.L. 2013)....................13, 14

*In re Panty Hose Seaming Pat. Litig.*,
402 F. Supp. 1401 (J.P.M.L. 1975)....................13

*In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods. Liab. Litig.*,
996 F. Supp. 2d 1380 (J.P.M.L. 2014)....................14

*Polistico v. Amazon.com, Inc. and Amazon.com Services LLC*,
No. 1:26-cv-04194 (E.D.N.Y.)....................8, 10, 11

*Rittenhouse v. Amazon.com, Inc.*,
No. 2:26-cv-03392 (E.D.N.Y.)....................7, 10, 11

*Rosen v. Amazon.com, Inc.*,
Case No. 2:26-cv-01823-TL (W.D. Wash.)....................4

*In re Salesforce, Inc., Customer Data Sec. Breach Litig.*,
813 F. Supp. 3d 1355 (J.P.M.L. 2025)....................15

*Sangha v. Amazon.com, Inc. and Amazon.com Services LLC*,
No. 1:26-cv-01777 (N.D. Ohio)....................8, 10, 11

**Statutes & Rules**

28 U.S.C. § 1407.................... *passim*

Fed. R. Civ. P. 41....................4

Fla. Stat. § 817.41....................6

Fla. Stat. §§ 501.201–501.213....................6

MCL § 445.903....................7

N.Y. Gen. Bus. Law § 349....................7, 8

Ohio Rev. Code § 1345.02....................9

Wash. Rev. Code Ann. § 19.86.010, *et seq*. ....................5, 8

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004)....................9, 11, 15

Plaintiffs Mari Cartagenova, Kathleen Holm, Jerry Kmiec, Jeffrey Price, and Howard Rosen ("Plaintiffs") in *In re Amazon Tariff Litigation*, Case No. 2:26-cv-01670-TL (W.D. Wash.) (the "Washington Action"), respectfully submit this Memorandum of Law and Fact in support of their motion for transfer and consolidation of related actions under 28 U.S.C. § 1407.

## I. INTRODUCTION

Plaintiffs seek an Order (i) transferring to the Western District of Washington the cases listed in the Schedule of Actions filed in other districts, along with any tag-along actions asserting similar claims (collectively, "Related Actions"); and (ii) consolidating the Related Actions for pretrial discovery and class certification consideration with the Washington Action. Transfer and consolidation in the Western District of Washington would promote efficient management of the litigation because:

- The five pending Related Actions involve identical factual allegations with the Washington Action that defendant Amazon.com, Inc. ("Amazon") unlawfully retained monies collected from consumers to cover the costs of the now invalidated International Emergency Economic Powers Act ("IEEPA") tariffs ("IEEPA tariffs"). All pending Related Actions bring largely duplicative legal claims. As a result, discovery in all Related Actions will focus on identical documents, witnesses, and other evidence relating to Amazon's conduct and knowledge. Absent consolidation, duplicative discovery and potentially conflicting legal rulings (including on class certification) may result.
- The Related Actions involve overlapping putative classes as the Washington Action, as they all seek to certify classes of purchasers of who, during the period beginning on February 4, 2025, through February 20, 2026, purchased any good subject to IEEPA tariffs from Amazon's Online Stores and paid a surcharge to cover the IEEPA tariffs. Absent consolidation, five district courts could issue conflicting or duplicative class certification rulings.

- Judge Tana Lin (who is presiding over the first-filed Washington Action in the Western District of Washington) has experience in class litigation, and (to Plaintiffs' knowledge) has not had the opportunity to preside over an MDL. Therefore, Judge Lin is a prime candidate to rule over this proposed MDL.

## II. BACKGROUND

### A. Allegations in the First-Filed Washington Action and the Related Actions

All of these pending class actions allege that Amazon has unlawfully shifted the cost of the International Emergency Economic Powers Act ("IEEPA") tariffs onto consumers, all the while representing to those same consumers that it was protecting them from precisely that harm. Amazon then refused to return the funds it wrongfully extracted even after the tariffs underlying those charges were declared illegal, despite the ability to obtain, or its retention of, a return of all tariffs paid by consumers from the United States government. Each complaint centers on the same course of conduct: Amazon collected hundreds of millions of dollars, if not billions, from consumers by raising prices on goods sold through its online store to cover tariffs imposed under the IEEPA, retained those funds after the tariffs were struck down as unlawful, and left consumers with no means of recovering what they were forced to pay.

Amazon is one of the world's largest retail companies, ranking as the second-largest retailer globally and sixth among all importers of consumer goods into the United States. Amazon purchases goods wholesale from vendors, suppliers, and manufacturers—including a substantial volume of goods imported from outside the United States—and resells them directly to consumers nationwide as the importer of record ("IOR") responsible for paying the applicable tariffs to U.S. Customs and Border Protection. Amazon was the listed seller for roughly 40% of the sales on its marketplace, representing $269.3 billion in sales in 2025 alone, and American consumers nationwide paid more than $231 billion in tariff costs between February 2025 and February 2026, an average of roughly $1,745 per family.

Consumers relied on Amazon's carefully cultivated reputation as the low-price leader of American retail when deciding to shop on its platform, and the Washington Action and the Related

Actions allege that Amazon understood and exploited that reliance. Amazon has consistently represented to consumers that it is committed to offering the lowest possible prices across its selection of products, and that this reputation for low, competitive prices is central to earning and keeping customer trust. Because reasonable consumers understood these representations to mean that Amazon would not pass tariff charges on to them and would make a good-faith effort to offer the best possible prices, this pricing reputation was material to Plaintiffs' and Class members' decisions to purchase products from Amazon rather than elsewhere.

The Washington Action and the Related Actions allege that Amazon's specific representations concerning its response to the tariffs were false and misleading. Throughout 2025, Amazon's senior executives repeatedly assured consumers and the public that Amazon was absorbing the tariff-related cost increases and that its prices remained low and largely unaffected by the tariffs. Notwithstanding these repeated public pledges, the complaints allege that Amazon in fact raised prices on tariffed goods throughout the Class Period. By early 2026, Amazon's own executives acknowledged that the tariffs had begun to affect its prices, contradicting the company's earlier public statements.

The Washington Action and the Related Actions further allege that Amazon concealed the true nature of its tariff pass-through and withheld from consumers material information about its refusal to make them whole. Amazon maintains the pricing and transaction data necessary to identify exactly what portion of each price increase was attributable to the IEEPA tariffs, and at one point considered disclosing that information to consumers before abandoning the plan amid political pressure. Despite knowing that consumers, not Amazon, bore the ultimate economic burden of the tariffs, Amazon failed to disclose that it had no intention of refunding the tariff-inflated amounts consumers paid even after the tariffs were invalidated. Because Amazon alone, as the IOR, holds the exclusive right to seek a refund of the invalidated tariffs from the federal government, the complaints allege that Amazon stands to recover the same tariff twice—once from consumers and again from the government—while consumers who bore the true cost have no independent avenue for redress. The Washington Action and the Related Actions allege this

conduct was compounded by Amazon's decision to forgo pursuing refunds to curry favor with the presidential administration, using consumer funds to advance its own interests rather than to make consumers whole.

Despite full awareness that the Supreme Court had declared the IEEPA tariffs unlawful and that the funds it collected from consumers to cover those tariffs were therefore taken without legal basis, Amazon has made no commitment or attempt to compensate consumers for those payments and has given no indication that it intends to do so. Amazon has, in short, generated and retained a windfall from unlawful government action, and it is consumers who continue to bear the cost of that inaction.

## B. Procedural History of the Pending Washington Action and Related Actions

### 1. Proceedings in the First-Filed Washington Action

Plaintiffs Mari Cartagenova, Kathleen Holm, Jerry Kmiec, Jeffrey Price, and Howard Rosen purchased products subject to IEEPA tariffs from Amazon.com's Online Store. On March 15, 2026, Plaintiff Cartagenova filed *Markland, et al. v. Amazon.com, Inc.*, Case No. 2:26-cv-01670-TL (W.D. Wash.), ECF No. 1.[1] On March 28, 2026, Plaintiff Rosen filed *Rosen v. Amazon.com, Inc.*, Case No. 2:26-cv-01823-TL (W.D. Wash.), ECF No. 1. The *Markland* and *Rosen* matters were the first cases to challenge Amazon's practices relating to IEEPA tariffs. Both cases were assigned to the Honorable Tana Lin.

On June 8, 2026, the parties stipulated to consolidate the *Markland* and *Rosen* matters and adopt the new caption *In re Amazon Tariff Litigation*.[2] On June 19, 2026, the Court granted the parties' stipulation and ordered the *Markland* and *Rosen* matters consolidated. *In re Amazon Tariff Litig.*, ECF No. 19. The Court ordered that the consolidated action would continue under the *Markland* case number (26-cv-1670), should bear the caption: *In re Amazon Tariff Litigation* and

[1] An additional plaintiff, Lisa Markland, was also a named plaintiff in this complaint. Plaintiff Markland has since filed a Notice of Voluntary Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). *In re Amazon Tariff Litig.*, ECF No. 21. The consolidated docket shall be referred to as "*In re Amazon Tariff Litig.*" going forward.

[2] *In re Amazon Tariff Litig.*, ECF No. 18.

further ordered the Plaintiffs to file a Consolidated Amended Complaint within forty-five (45) days. *Id.* at 2. On July 30, 2026, Plaintiffs filed their Consolidated Amended Class Action Complaint. *In re Amazon Tariff Litig.*, ECF No. 20 ("*In re Amazon Tariff Litig.* Compl."); *see also* Schedule of Actions, Ex. 1. Amazon has until September 28, 2026 to answer or otherwise respond. *In re Amazon Tariff Litig.*, ECF No. 19.

The putative class is defined as "[a]ll persons who, during the period beginning on February 4, 2025, through February 20, 2026, purchased any good subject to IEEPA tariffs from Amazon's Online Stores and paid a surcharge to cover the IEEPA tariffs." *In re Amazon Tariff Litig.* Compl., ¶74. The Consolidated Complaint alleges the following claims: (1) Violation of the Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86.010, et seq., (Count I); (2) Unjust Enrichment/Quasi-Contract (Count II); (3) Constructive Trust (Count III); and (4) Money Had and Received (Count IV).

As provided for in Amazon's "Conditions of Use" that appear on Amazon's website, Plaintiffs specifically brought claims under Washington law because of a choice-of-law provision which reads:

> By using any Amazon Service, you agree that applicable federal law, and the laws of the state of Washington, without regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise between you and Amazon.[3]

In addition, Plaintiffs specifically filed their complaints in the Western District of Washington because of a forum selection clause in the "Conditions of Use" which reads:

> Any dispute or claim relating in any way to your use of any Amazon Service will be adjudicated in the state or Federal courts in King County, Washington, and you consent to exclusive jurisdiction and venue in these courts. We each waive any right to a jury trial. *Id.*

**2. The Related Actions**

After Plaintiffs filed the Washington Action, different plaintiffs' counsel filed five complaints in four different districts, parroting the same factual allegations. These later filed five

[3] Conditions of Use, AMAZON, https://www.amazon.com/gp/help/customer/display.html?nodeId=GLSBYFE9MGKKQXXM (last accessed July 31, 2026).

complaints are near copycats of one another and contain barebones allegations compared to the Washington Action. While the latter filed five complaints contain less detail compared to the Washington Action, all five of the Related Actions focus on the same conduct by Amazon and the same harm to consumers. As a result, there are six pending actions, all of which allege the same facts and assert violations of statutory consumer protection laws and money had and received. Four Related Actions make claims for unjust enrichment. While three Related Actions also name Amazon.com Services LLC as a defendant, all five Related Actions name Amazon.com, Inc. as a defendant. These five Related Actions are:

**a. The Florida action**

*Lasseter v. Amazon.com, Inc.*, No. 8:26-cv-02019 (M.D. Fla.), filed July 14, 2026, ECF No. 1 ("*Lasseter* Compl."). *See* Schedule of Actions, Ex. 2. The case is pending before the Honorable William F. Jung. The putative class is defined as follows:

> *Imported Product Subclass*: All persons who, during the period beginning February 4, 2025 through February 20, 2026, purchased from Defendant a good that was itself subject to IEEPA tariffs, at a price that Defendant increased to pass through the IEEPA tariffs assessed on that good."
>
> *US-Sourced Product Subclass*: All persons who, during the same period, purchased from Defendant a U.S.-sourced good not itself subject to IEEPA tariffs, at a price that Defendant increased to spread, recover, or offset across its product line the IEEPA tariff costs it incurred on its imported goods. *Id.* ¶44(a)-(b).

The complaint alleges the following claims: (1) Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–501.213, (Count I); (2) the False and Misleading Advertising, Fla. Stat. § 817.41, (Count II); (3) Unjust Enrichment (Count III); and (4) Money Had and Received (Count IV).

**b. The Michigan action**

*Emerson v. Amazon.com Inc. and Amazon.com Services LLC*, No. 2:26-cv-12614-TGB-EAS (E.D. Mich.), filed July 29, 2026, ECF No. 1 ("*Emerson* Compl."). *See* Schedule of Actions,

Ex. 3. The case is pending before the Honorable Terrence G. Berg. The putative class is defined as follows:

> *Imported Product Subclass*: All persons who, during the period beginning on February 4, 2025 through February 20, 2026, purchased from Amazon a good labeled as either being "Sold by Amazon.com" or where the "Shipper / Seller" is "Amazon.com," that was itself subject to IEEPA tariffs, at a price that Amazon increased to pass through the IEEPA tariffs assessed on that good.
>
> *US-Sourced Product Subclass*: All persons who, during the same period, purchased from Amazon a U.S.-sourced good labeled as either being "Sold by Amazon.com" or where the "Shipper / Seller" is "Amazon.com," that was not itself subject to IEEPA tariffs, at a price that Amazon increased to spread, recover, or offset across its product line the IEEPA tariff costs it incurred on its imported goods. *Id.* ¶45(a)-(b).

The complaint alleges the following claims: (1) Unjust Enrichment (Count I); (2) Money Had and Received (Count II); and (3) Violation of the Michigan Consumer Protection Act, MCL § 445.903 (Count III).

**c. The first-filed New York action**

*Rittenhouse v. Amazon.com, Inc.*, No. 2:26-cv-03392 (E.D.N.Y.), filed June 5, 2026, ECF No. 1 ("*Rittenhouse* Compl."). *See* Schedule of Actions, Ex. 4. The case is pending before the Honorable Gary R. Brown. The putative class is defined as follows:

> *Imported Product Subclass*: All persons who, during the period beginning February 4, 2025 through February 20, 2026, purchased from Defendant a good that was itself subject to IEEPA tariffs, at a price that Defendant increased to pass through the IEEPA tariffs assessed on that good.
>
> *US-Sourced Product Subclass*: All persons who, during the same period, purchased from Defendant a U.S.-sourced good not itself subject to IEEPA tariffs, at a price that Defendant increased to spread, recover, or offset across its product line the IEEPA tariff costs it incurred on its imported goods. *Id.* ¶44(a)-(b).

The complaint alleges the following claims: (1) Violation of the New York Consumer Protection Law, N.Y. Gen. Bus. Law § 349, (Count I); (2) Violation of the New York Consumer

Protection Law, N.Y. Gen. Bus. Law § 350, (Count II); (3) Unjust Enrichment (Count III); and (4) Money Had and Received (Count IV).

**d. The second-filed New York action**

*Polistico v. Amazon.com, Inc. and Amazon.com Services LLC*, No. 1:26-cv-04194 (E.D.N.Y.), filed July 13, 2026, ECF No. 1 ("*Polistico* Compl."). *See* Schedule of Actions, Ex. 5. The case is pending before the Honorable Gary R. Brown. The putative class is defined as follows:

> *Imported Product Subclass*: All persons who, during the period beginning on February 4, 2025 through February 20, 2026, purchased from Amazon a good labeled as either being "Sold by Amazon.com" or where the "Shipper / Seller" is "Amazon.com," that was itself subject to IEEPA tariffs, at a price that Amazon increased to pass through the IEEPA tariffs assessed on that good.
>
> *US-Sourced Product Subclass*: All persons who, during the same period, purchased from Amazon a U.S.-sourced good labeled as either being "Sold by Amazon.com" or where the "Shipper / Seller" is "Amazon.com," that was not itself subject to IEEPA tariffs, at a price that Amazon increased to spread, recover, or offset across its product line the IEEPA tariff costs it incurred on its imported goods.
> *Id*. ¶45(a)-(b).

The complaint alleges the following claims: (1) Violation of the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86, et seq., (Count I); (2) Unjust Enrichment (Count II); (3) Money Had and Received (Count III); and (4) Violation of the New York Consumer Protection Laws, N.Y. Gen. Bus. Law §§ 349–350 (Count IV).

**e. The Ohio action**

*Sangha v. Amazon.com, Inc. and Amazon.com Services LLC*, No. 1:26-cv-01777 (N.D. Ohio), filed July 29, 2026, ECF No. 1 ("*Sangha* Compl."). *See* Schedule of Actions, Ex. 6. The case is pending before the Honorable Patricia A Gaughan. The putative class is defined as follows:

> *Imported Product Subclass*: All persons who, during the period beginning on February 4, 2025 through February 20, 2026, purchased from Amazon a good labeled as either being "Sold by Amazon.com" or where the "Shipper / Seller" is "Amazon.com," that was itself subject to IEEPA tariffs, at a price that Amazon increased to pass through the IEEPA tariffs assessed on that good.

> *US-Sourced Product Subclass*: All persons who, during the same period, purchased from Amazon a U.S.-sourced good labeled as either being "Sold by Amazon.com" or where the "Shipper / Seller" is "Amazon.com," that was not itself subject to IEEPA tariffs, at a price that Amazon increased to spread, recover, or offset across its product line the IEEPA tariff costs it incurred on its imported goods. *Id.* ¶45(a)-(b).

The complaint alleges the following claims: (1) Unjust Enrichment (Count I); (2) Money Had and Received (Count II); and (3) Violation of the Ohio Consumer Sales Practices Act ("CSPA"), Ohio Rev. Code § 1345.02 (Count III).

## III. ARGUMENT

### A. Transferring the pending class actions for pretrial proceedings is proper.

The principal goals of 28 U.S.C. § 1407 are to avoid duplicative discovery, prevent inconsistent or repetitive rulings, promote efficient management of litigation, and conserve the resources of the parties, counsel, and the courts. *See* MANUAL FOR COMPLEX LITIGATION § 22.33, p. 367 (4th ed. 2004). These goals are best served by transferring the Related Actions for coordinated pretrial proceedings. Under 28 U.S.C. § 1407, this Panel is authorized to transfer and consolidate two or more civil cases for coordinated pretrial proceedings upon the determination that (i) they "involv[e] one or more common questions of fact," (ii) transfer will further "the convenience of parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

Here, Section 1407's requirements for transfer are satisfied. The pending Washington Action and Related Actions against Amazon are based on the same or substantially similar questions of law and fact. In addition, transfer will promote the convenience of the parties and efficiency in the pretrial proceedings by eliminating duplicative discovery and the potential for inconsistent rulings, including class certification rulings. Because all the actions assert complex, yet virtually identical claims and allegations requiring substantial discovery into Amazon's conduct and knowledge, they are well-suited for transfer for coordinated or consolidated pretrial proceedings.

The JPML "routinely . . . centralize[s] actions asserting similar claims under different state statutes where they involve common questions of fact." *In re BPS Direct, LLC, & Cabela's LLC, Wiretapping Litig.*, 677 F. Supp. 3d 1363, 1364–65 (J.P.M.L. 2023). Thus, it is "within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state." *In re CVS Caremark Corp. Wage & Hour Emp't Pracs. Litig.*, 684 F. Supp. 2d 1377, 1378 (J.P.M.L. 2010) (citation omitted).

**1. All of these class actions involve common questions of fact.**

The first requirement of Section 1407—that actions involve common questions of fact—is satisfied. The factual issues to be determined in each of the actions proposed for transfer and coordination arise from the same course of conduct by Amazon and are identical for pretrial purposes. The following common questions of fact at issue are identified in each of the actions include, but are not limited to:

a. Whether the higher prices that consumers paid for products on Amazon Online Stores are attributable to the cost of IEEPA tariffs;[4]

b. whether Amazon is obligated to return the cost of IEEPA tariffs to the consumers who paid them in the form of higher prices;[5]

c. whether Amazon's use of IEEPA tariff-related funds to benefit Amazon's business and political interests was unlawful;[6]

d. whether Amazon acted unlawfully by upcharging consumers in response to IEEPA tariff-related costs while making statements to the contrary;[7]

---

[4] *In re Amazon Tariff Litig.* Compl., ¶81(a); *Lasseter* Compl., ¶51(a); *Emerson* Compl., ¶52(a); *Rittenhouse* Compl., ¶51(a); *Polistico* Compl., ¶52(a); *Sangha* Compl., ¶52(a).

[5] *In re Amazon Tariff Litig.* Compl., ¶81(b); *Lasseter* Compl., ¶51(b); *Emerson* Compl., ¶52(b); *Rittenhouse* Compl., ¶51(b); *Polistico* Compl., ¶52(b); *Sangha* Compl., ¶52(b).

[6] *In re Amazon Tariff Litig.* Compl., ¶81(c); *Lasseter* Compl., ¶51(d); *Emerson* Compl., ¶52(d); *Rittenhouse* Compl., ¶51(d); *Polistico* Compl., ¶52(d); *Sangha* Compl., ¶52(d).

[7] *In re Amazon Tariff Litig.* Compl., ¶81(d); *Lasseter* Compl., ¶51(e); *Emerson* Compl., ¶52(e); *Rittenhouse* Compl., ¶51(e); *Polistico* Compl., ¶52(e); *Sangha* Compl., ¶52(e).

e. whether Amazon's conduct constitutes an unlawful practice under consumer protection statutes by collecting tariff-related surcharges from consumers while misrepresenting its pricing practices and failing to establish a consumer refund mechanism;[8]

f. whether Amazon's retention of elevated consumer payments constitutes unjust enrichment;[9] and

g. whether Amazon's conduct has harmed Plaintiffs and the Class uniformly.[10]

A review of the pleadings in the Related Actions reveals that the factual issues to be determined in each of the actions are nearly identical, making transfer to a single forum highly appropriate. As the Panel has noted, "[t]hat the actions involve differing legal claims is 'not significant when, as here, the actions arise from a common factual core.'" *In re Dividend Solar Fin., LLC, & Fifth Third Bank Sales & Lending Pracs. Litig.*, 753 F. Supp. 3d 1365, 1367 (J.P.M.L. 2024) (quoting *In re Air Crash Over the S. Indian Ocean, on Mar. 8, 2014*, 190 F. Supp. 3d 1358, 1359 (J.P.M.L. 2016)).

**2. Consolidating the class actions will further the convenience of the parties and the witnesses.**

Consolidation of the related class actions would satisfy the second requirement of Section 1407 because it would serve the convenience of the parties and witnesses. As the Supreme Court has stated, "[t]ransfer under § 1407 aims to 'eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.'" *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 410 (2015) (quoting MANUAL FOR COMPLEX LITIGATION § 20.131, p. 220).

---

[8] *In re Amazon Tariff Litig.* Compl., ¶81(e); *Lasseter* Compl., ¶51(f); *Emerson* Compl., ¶52(f); *Rittenhouse* Compl., ¶51(f); *Polistico* Compl., ¶52(f); *Sangha* Compl., ¶52(f).

[9] *In re Amazon Tariff Litig.* Compl., ¶81(k); *Lasseter* Compl., ¶51(c); *Emerson* Compl., ¶52(c); *Rittenhouse* Compl., ¶51(c); *Polistico* Compl., ¶52(c); *Sangha* Compl., ¶52(c).

[10] *In re Amazon Tariff Litig.* Compl., ¶81(l); *Lasseter* Compl., ¶51(g); *Emerson* Compl., ¶52(g); *Rittenhouse* Compl., ¶51(g); *Polistico* Compl., ¶52(g); *Sangha* Compl., ¶52(g).

Discovery in the Washington Action and the Related Actions will necessarily focus on documents, witnesses, and other evidence pertaining to Amazon's conduct and knowledge. These subjects will require substantial discovery and entail significant expense. Because these actions arise from a common core of factual allegations, there is a strong likelihood of duplicative discovery demands and redundant depositions. Coordination of the actions would enable a single district judge to establish a single pretrial schedule, thereby minimizing inconvenience to witnesses and expense to parties.

Plaintiffs also anticipate that the Washington Action and the Related Actions will involve substantial expert discovery as the parties in the Washington Action and the Related Actions have already cited to dozens of scientific and technical articles in their initial filings. As such, Plaintiffs are considering retaining experts who will opine on the following areas: class damages, consumer preferences and valuations (e.g., conjoint study), supply chain monitoring and enforcement, importing practices and procedures, and pass through and pass on pricing. By centralizing oversight and procedures, consolidation will reduce duplication, encourage cooperation among parties, set a uniform schedule on expert matters, and eliminate the likelihood of expensive duplicative discovery and its associated delays.

Finally, Plaintiffs expect any potential third-party discovery to be especially complex as the relevant portion of the supply chain is focused outside the United States. It is also likely that some discovery will take place in any number of foreign languages since IEPPA tariffs were applied to goods imported from nearly every country with which the United States has a trading relationship. Plaintiffs plan to seek discovery from not only foreign private entities (e.g., foreign manufacturers) but also from Customs and Border Patrol officials with knowledge of the IEPPA tariffs.

A consolidated action will help to streamline and provide uniform resolution of the many legal and procedural conflicts that often go along with foreign discovery, including questions of cross-border enforcement of subpoenas, evidentiary disputes, legal translation protocols, and the sharing of foreign-sourced documents. An MDL also eliminates any duplicative and wasteful efforts of having multiple plaintiffs and defendants independently pursuing foreign discovery. *See,*

*e.g.*, *In re Benicar (Olmesartan) Prods. Liab. Litig.*, 96 F. Supp. 3d 1381, 1382 (J.P.M.L. 2015) ("Even without considering the possibility of additional actions, the present number of involved cases and districts is sufficient to warrant centralization, especially given the complexity of the issues involved and the likelihood of at least some foreign discovery.") (footnote omitted); *In re Panty Hose Seaming Pat. Litig.*, 402 F. Supp. 1401, 1402 (J.P.M.L. 1975) ("[T]he domestic and foreign discovery essential to illumination of the prior use issue and, in turn, the Ferrell validity issue, would be needlessly duplicated in the absence of coordinated or consolidated pretrial proceedings.").

**3. Transfer and consolidation will promote just and efficient conduct of these class actions.**

For these same reasons, transfer and coordination would also promote the just and efficient adjudication of these class actions. The Washington Action and the Related Actions all raise common questions of fact and law. In addition to the risk of unnecessary and duplicative discovery (and dueling rulings on the same discovery issues in different courts), the fact that the actions seek to certify overlapping classes opens the possibility of inconsistent rulings on class certification issues and weighs heavily in favor of transfer and consolidation. To avoid the possibility of inconsistent rulings (including inconsistent decisions on class certification) and duplicative discovery, as well as needless taxation on the judicial system, the actions should be consolidated.

The facts and persons harmed in each of these class actions overlap almost entirely. Even if they did not, the similarities are substantial, and the Panel has routinely held that transfer and consolidation was appropriate in similar circumstances. In *In re: North Sea Brent Crude Oil Futures Litigation*, 978 F. Supp. 2d 1384, 1385 (J.P.M.L. 2013), the Panel consolidated six actions "regarding whether defendants manipulated North Sea Brent Crude oil prices and the prices of Brent Crude Oil futures contracts." Five actions sought class certification under New York law and the sixth sought class certification under Louisiana law. Plaintiffs in the Louisiana action opposed consolidation, arguing that their "action is brought on behalf of a unique putative class, and that it involves certain matters particular to the oil business in Louisiana and Texas." *Id.* at

1384. The Panel rejected their argument, explaining that "[m]any MDLs, however, encompass non-overlapping classes." *Id.* (citing *In re: Chrysler LLC 2.7 Liter V–6 Engine Oil Sludge Prods. Liab. Litig.*, 598 F. Supp. 2d 1372 (J.P.M.L. 2009) (centralizing five non-overlapping putative statewide class actions)). The panel then stated that "all actions in this docket share factual issues arising from allegations that defendants conspired to fix, restrain trade in, and manipulate the prices of North Sea Brent Crude oil and Brent Crude oil futures contracts. Centralization will avoid duplicative discovery and eliminate the possibility of inconsistent rulings on *Daubert* motions and other pretrial matters." *Id.* at 1385.

Similarly, in *In re Pella Corp. Architect & Designer Series Windows Marketing, Sales Practices & Products Liability Litigation*, 996 F. Supp. 2d 1380, 1382 (J.P.M.L. 2014), the defendant opposed transfer and argued that "all but one of the six constituent actions are brought on behalf of non-overlapping statewide classes, and that thus there is minimal risk of conflicting class certification rulings." The Panel rejected that argument because three of the related actions were "brought on behalf of putative nationwide classes. Moreover, as we previously have observed, '[m]any MDLs encompass non-overlapping classes.'" *Id.* (quoting *In re N. Sea Brent Crude Oil*, 978 F. Supp. 2d at 1385). Similarly here, one of the Related Actions is on behalf of a putative nationwide class (the New York *Maggio* action), while the others seek certification of state-law classes. The Panel frequently coordinates actions alleging both federal and state classes. *See also In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*, 655 F. Supp. 3d 1370, 1371 (J.P.M.L. 2023) ("The putative nationwide and state classes overlap to a large extent. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly with respect to class certification motions; and conserve the resources of the parties, their counsel, and the judiciary.").

### B. The Related Actions should be transferred to the Western District of Washington before Judge Lin under § 1407.

In selecting a transferee district, this Panel generally considers "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site

of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." MANUAL FOR COMPLEX LITIGATION § 20.131.

The balance of these factors weigh in favor of transferring the related cases to the Western District of Washington. While the Eastern District of New York has two cases pending, proceedings have sufficiently advanced in the Western District of Washington that the two Washington cases have now already been consolidated into one. *In re Amazon Tariff Litig.*, ECF Nos. 19, 20. Discovery has not yet occurred in any of these matters making this factor neutral. Amazon has yet to answer any of the complaints, making this factor neutral as well. Most of the common facts occurred in the Western District of Washington since all the relevant decisions underlying Amazon's conduct were made at Amazon's headquarters which is located in this district. *See e.g.*, *In re Salesforce, Inc., Customer Data Sec. Breach Litig.*, 813 F. Supp. 3d 1355, 1359 (J.P.M.L. 2025) ("We are persuaded that the Northern District of Illinois is the appropriate transferee district for the TransUnion MDL. TransUnion's headquarters is in Chicago… ."). Compared to any other district, cost and inconvenience will be minimized since all or nearly all of Amazon's witnesses reside in the Western District of Washington. Legal costs for both sides will be minimized since at least two of the law firms in *In re Amazon Tariff Litigation* (plaintiffs' counsel Hagens Berman Sobol Shapiro, LLP and defense counsel Davis Wright & Tremaine) are headquartered in the Western District of Washington. And again, Amazon's "Conditions of Use" require that each of the Related Actions be heard in the Western District of Washington and are subject to Washington law.[11]

Finally, Judge Lin has experience with class actions and specifically class actions involving Amazon. *See e.g.*, *In Re Amazon Service Fee Litig.*, Case No. 2:26-cv-00743-TL (W.D. Wash.). However, to Plaintiffs' knowledge, Judge Lin has never had the opportunity to preside over an MDL. *See In re Dividend Solar*, 753 F. Supp. 3d at 1367 ("We select the District of Minnesota as

[11] Conditions of Use, AMAZON, https://www.amazon.com/gp/help/customer/display.html?nodeId=GLSBYFE9MGKKQXXM (last accessed July 31, 2026).

the transferee district for this litigation. One potential tag-along action—State of Minnesota—is pending there, before Judge Katherine M. Menendez. Judge Menendez, to whom we assign the litigation, is a skilled jurist who has not yet had the opportunity to preside over an MDL. We are confident that she will steer this matter on an efficient and prudent course."). Moreover, the JPML reports that compared to the districts in which Related Actions are pending, the Western District of Washington has the fewest MDLs pending (as of July 1, 2026).[12]

In sum, the Western District of Washington presents the best option for consolidation and transfer under the Manual for Complex Litigation's guidance.

## IV. CONCLUSION

Plaintiffs respectfully request that under § 1407, this Panel transfer the Related Actions listed in the Schedule of Actions, along with any subsequently filed cases raising similar claims, to the Western District of Washington before Judge Lin for coordinated pretrial proceedings.

DATED: July 31, 2026

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: */s/ Steve W. Berman*
Steve W. Berman, (SBN 12536)
Sydney K. Thomas (SBN 64571)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com
Email: sydney.thomas@hbsslaw.com

Christopher R. Pitoun (*pro hac vice*)
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Email: christopherp@hbsslaw.com

[12] There are only seven MDLs pending in the Western District of Washington compared to thirty-six for the Middle District of Florida, sixty-one for the Eastern District of Michigan (seven of which are before Judge Berg), and 1,960 for the Eastern District of New York. *See* JPML, *MDL Statistics Report - Distribution of Pending MDL Dockets by District* (July 1, 2026), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-1-2026.pdf (last visited July 31, 2026).

Dana Abelson (SBN 63278)
455 N Cityfront Plaza Dr. Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Email: dana.abelson@hbsslaw.com

Kelly L. Tucker (*pro hac vice*)
Matthew Denn (*pro hac vice*)
**GRANT & EISENHOFER P.A.**
123 Justison Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 622-7000
Email: ktucker@gelaw.com
Email: mdenn@gelaw.com

Thomas Walsh (*pro hac vice*)
GRANT & EISENHOFER P.A.
485 Lexington Avenue, 29th Floor New York,
NY 10017 Telephone:
(646) 722-8500
Email: twalsh@gelaw.com

*Attorneys for Plaintiffs Mari Cartagenova, Kathleen Holm, Jerry Kmiec, Jeffrey Price, and Howard Rosen in In re Amazon Tariff Litigation, Case No. 2:26-cv-01670-TL (W.D. Wash.)*